IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ENRIQUE VASQUEZ and JUAN ANDRES RUIZ on behalf of a class of similarly situated employees,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>COAST VALLEY ROOFING INC. dba COAST ROOFING,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. CV-F-07-227 OWW/DLB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' TWELFTH CAUSE OF ACTION WITH LEAVE TO AMEND (Doc. 11) |

        Plaintiffs' Complaint is brought as a class action on behalf of Plaintiffs and former non-exempt employees of Defendant. Paragraph 22 of the Complaint alleges that Defendant has maintained and enforced against its non-exempt employees, the following unlawful practices and polices in violation of California and federal wage and hour laws:

                a.  failing to pay premium overtime wages for
                hours worked in excess of 8 hours in one day,
                40 hours in a workweek, and on the seventh

1

day of a workweek without overtime pay;

b. failing to pay minimum wages for all hours worked;

c. failing to pay accrued vacation wages

d. failing to permit rest periods of at least (10) minutes per four (4) hours worked or major fraction thereof and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided;

e. failing to provide, to work at least five (5) hours without a meal period and failing to pay such employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period was not provided;

f. failing to provide accurate itemized wage statements;

g. failing to maintain accurate time-keeping records;

h. failing to reimburse employees for expenses reasonably incurred;

i. failing to pay wage deductions to the proper state and federal authorities;

j. failing to compensate for all hours worked at hourly wage rates above the minimum wage rate;

k. requiring employees to report to work but not putting employees to work or furnishing less than half their usual or scheduled day's work, and while paying less than half the usual or scheduled day's work at their regular rate of pay;

l. failing to pay all earned wages and/or premium wages due and owing at the time that any Class member's employment with DEFENDANT terminated;

m. refusing to pay all wages when due;

2

n. charging employees to rent equipment
needed to complete tasks for the benefit of
the employer; and

o. failing to timely permit inspection and/or
copying of employment records requested by
employees.

The Twelfth Cause of Action is for Conversion.  After

incorporating all preceding allegations, the Twelfth Cause of

Action alleges:

117.  PLAINTIFFS and the Class labored for
and was subject to the control of DEFENDANT
and was permitted and/or required to suffer
work, all for the benefit of DEFENDANT, and
earned wages lawfully belonging to PLAINTIFFS
and the Class.  PLAINTIFFS also made
reasonable expenditures - including the
provision of vehicles and equipment, and even
the renting of equipment from DEFENDANT - on
the DEFENDANT'S behalf and have not been
reimbursed.  DEFENDANT converted to it's own
use the lawful wages and monies of PLAINTIFFS
and the class by unlawfully requiring them to
work at hourly and/or piece rates below the
minimum wage and converting minimum wages due
to DEFENDANT'S own use, failing to pay
overtime premium and converting overtime
wages due to DEFENDANT'S own use; failing to
provide rest and meal periods without
compensating non-exempt employees one hour's
pay for each instance such periods were not
provided, failing to reimburse employees for
expenditures taken on the employer's behalf
and the other violations described in this
complaint and converted said monies and labor
DEFENDANT'S [sic] own use.

118.  As a result of the unlawful acts of
DEFENDANT, PLAINTIFFS and the Class have been
deprived of wages in amounts to be determined
at trial, and are entitled to recovery of
such amounts, punitive damages, and other
equitable relief.

Defendant moves to dismiss the Twelfth Cause of Action

pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure,

3

contending that the cause of action does not state a cognizable legal theory.

A.   <u>Governing Standards</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged

4

in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

    B.  <u>Merits of Motion</u>.

      Defendant contends that the Twelfth Cause of Action for conversion is simply an effort to recast statutory wage and hour claims as a tort in order to recover tort damages.

      As explained in *Farmers Inc. Exchange v. Zerin*, 53 Cal.App.4th 445, 451 (1997):

> 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied to property to his own use ....' ... Money can be the subject of an action for conversion if a specific sum capable of identification is involved ....
>
> Neither legal title nor absolute ownership of the property is necessary ... A party need only allege it is 'entitled to immediate possession at the time of conversion ...' ... However, a mere contractual right of payment, without more, will not suffice.

      Defendant argues that Plaintiffs have not stated a cognizable claim for conversion because generalized claims for unspecified sums of money or indebtedness are not cognizable as

conversion.  Defendant relies on *Farmers Ins. Exchange v. Zerin*,
*supra*, and *Vu v. California Commerce Club*, 58 Cal.App.4th 229
(1997).

In *Farmers Ins. Exchange*, the insurance company issued
separate policies of automobile insurance to Joseph Stewart and
Linda Kendrick, which provided for the payment of medical
benefits in the event of an accident in which the insured or
another covered person is injured.  Both insureds were involved
in automobile accidents in which the insureds and other were
injured.  Claims for medical benefits were submitted and the
insurance company paid the claims.  The policies issued to the
insureds contained the provision: "When a person has been paid
damages by us under this policy and also recovers from another,
the amount recovered from the other shall be held by that person
in trust for us and reimbursed to us to the extent of our payment
...."  The insureds hired attorney Zerin to represent them in
their claims against third party tortfeasors responsible for
their injuries.  The insurance company notified Zerin of the
policy provisions requiring reimbursement upon recovery from
third parties.  Zerin thereafter received payments from the third
party tortfeasors on behalf of the insureds but failed to pay any
portion of the recovery to Farmers, disbursing the funds instead
to himself and others.  53 Cal.App.4th at 450.  On appeal,
Farmers argued that it had a sufficient property interest in the
third party recoveries by virtue of the policies' provisions
which created an actual or equitable lien on the funds, citing

cases holding that "[o]ne who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion." *Id.* at 452. The Court of Appeals then discussed cases involving equitable liens, noting that "[a] promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund" and discussing other issues relevant to the creation of equitable liens, *Id.* at 453-456, and concluded that "[o]n the bare allegations of the complaint, this matter appears to be nothing more than an attempt by Farmers to avoid the necessity of seeking repayment from the parties primarily responsible by simply giving notice to their personal representative". The Court of Appeal thus upheld the demurrer to the insurance company's claim for conversion.

In *Vu v. California Commerce Club, Inc.*, two card players brought an action against a card club to recover moneys lost while playing card games at the club, the plaintiffs alleging that their losses were the result of other players' cheating and a breach of the card club's implied contractual obligations to them. The Court of Appeal held that the trial court properly granted summary judgment for the card club on the cause of action for conversion and conspiracy to commit conversion:

> The subject of these causes of action, and the damages alleged in them, once again were the funds plaintiffs lost. But neither by pleading nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them. That rendered the generalized claim for money not actionable as

conversion ... Indeed, the gist of
plaintiffs' case was that much of the money
they lost was taken by persons other than the
club or its employees.  Any amounts the club
may have taken (e.g., Pan-Nine bets
confiscated upon discovery of cheating) also
were not identified.

58 Cal.App.4th at 235.

Relying on these two cases, Defendants argue that
Plaintiffs' conversion cause of action does not relate to a
"specified fund":

Plaintiffs have simply alleged that Defendant
owes them what they contend amount to wages
and/or unreimbursed expenses under Labor Code
section 203 (and other Code sections) because
of violations of the specified Labor Code
sections.  These allegations may establish a
statutory or property right to payment, but
is not the specified fund essential to plead
a claim for conversion of money.

Defendants further contend that the California Labor Code
provides statutory remedies for employees to seek unpaid wages
and that common law remedies are not generally available in
actions to recover wages.

Defendants cite *Oppenheimer v. Robinson*, 150 Cal.App.2d 420,
422-423 (1957).  However, there is no such holding in this case
or any discussion that common law remedies are not generally
available in actions to recover wages.  Therefore, Defendants'
contention is not supported by authority.

Plaintiffs cite *Department of Industrial Relations v. UI
Video Stores, Inc.*, 55 Cal.App.4th 1084 (1997) as authority that
a claim for conversion can be stated as well as statutory claims
for unpaid wages.  There, the Department of Industrial Relations

8

(DLSE) brought an action against an employer seeking reimbursement for the cost of uniforms the employer had required its employees to furnish in violation of law.  The DLSE and the employer entered into a settlement agreement whereby the employer agreed to deliver to the DLSE checks made payable to each affected employee.  Rather than comply with the settlement agreement, the employer mailed the checks directly to the employees.  A number of the checks were returned as undeliverable.  The employer eventually turned over the undelivered checks to the DLSE, but instructed its bank not to honor them, asserting that it had complied with the settlement agreement and intended to keep the funds equal to the undeliverable checks.  The DLSE filed a complaint against the employer for breach of the settlement agreement and conversion of the checks.  The trial court granted summary judgment for the employer and the Court of Appeals reversed.  With regard to DLSE's claim for conversion, the Court of Appeal held:

> The DLSE's second cause of action alleged that the DLSE had the right to immediate possession of the checks and that Blockbuster unlawfully converted the checks to its own use ... Blockbuster argues that the DLSE has no right to exercise dominion and control of the checks, that Blockbuster is willing to issue a new check if the missing employee is located, and that appellant suffered no damages because it has no right to deposit the checks.
>
> The issues of DLSE's authority and Blockbuster's theory of lack of damages have been resolved by our discussion of the DLSE's statutory and contractual authority to collect wages on behalf of the employees

> absent an actual assignment.  Furthermore, the DLSE need not possess legal title to the property at issue to support a cause of action for conversion.  A person without legal title to property may recover from a converter if the plaintiff is responsible to the true owner, such as in the case of a bailee or pledgee of the property ... The DLSE, which is empowered by section 96.7 to collect and deposit unpaid benefits, has such an interest.  It was error to grant summary judgment on this cause of action.

55 Cal.App.4th at 1096.

Plaintiffs acknowledge that *UI Video Stores, Inc.* is not on point authority supporting their claim for conversion, but contend that the decision demonstrates that a conversion cause of action may be brought for recovery of unpaid wages, including reimbursement of employee expenses.  Although the viability of the conversion claims was not at issue in either case, Plaintiffs also cite *Singh v. Superior Court*, 140 Cal.App.4th 387 (2006) and *Smith v. Superior Court*, 39 Cal.4th 77 (2006) to suggest the "common practice" under California labor law is to bring conversion claims as well as California Labor Code wage and hour claims.

Defendants rejoin that *UI Video, Inc.* is not authority that the Plaintiffs can state a cause of action for conversion for unpaid wages, because that conversion claim was based on the employer's retention of undeliverable checks that DLSE had an interest in, in violation of the settlement agreement with the DLSE.  Defendants further argue that the Plaintiffs' cases cited to demonstrate the alleged "common practice" of asserting

10

conversion as well as statutes as a basis for recovery of unpaid
wages, do no such thing:

> [U]nless this alleged 'common practice' has
> been recognized judicially as legitimate,
> then this assertion may amount to nothing
> more that the assertion that plaintiffs
> attorneys [sic] have made a 'common practice'
> of throwing in an appropriate (if not indeed
> frivolous) conversion claim with their wage
> and hour pleadings.

At the hearing, Plaintiffs argued that because Blockbuster
had ordered its bank not to honor the undeliverable checks and
intended to maintain sufficient funds to cover those amounts, *UI
Video, Inc.* involved a general fund as opposed to a specified
fund.

Plaintiffs' contention is meritless.  The specified fund was
the amount set forth in the Settlement Agreement.  Checks were to
be drawn against that specified fund and delivered to the DLSE
for transmittal to the employees.  The conversion occurred
because Blockbuster failed to turn over to the DLSE the
undeliverable checks as required by the Settlement Agreement,
instead using those funds for Blockbuster's own use.

Plaintiffs argue that Paragraph 117 of the Complaint pleads
their ownership or right to possession of personal property
because personal vehicles, equipment and earned wages are all
property rights of the Plaintiffs.  Plaintiffs rely on *Moreno v.
Greenwood Auto Center*, 91 Cal.App.4th 201, 210 (2001)(individual
sued a car dealer for conversion of an older truck and recovered
damages based on her belief she was trading in her old truck and

11

buying a newer truck, when in fact she executed a lease agreement
for the newer truck); *O'Flaherty v. Belgum*, 115 Cal.App.4th 1044,
1079 (2004)(dissenting opinion)("The withdrawing partners did not
reimburse OB for the reasonable value of the offices, equipment,
supplies, and employees paid for by OB and used by the
withdrawing partners from October 12, 1997, to December 31, 1997,
to set up and promote the business of OCMOH.  This use
constituted conversion of OB's property.").

Defendant replies that *Moreno* and *O'Flaherty* do not support
Plaintiffs' claim for conversion based on the allegations in
Paragraph 117 that "Plaintiffs also made reasonable expenditures
- including the provision of vehicles and equipment, and even the
renting of equipment from DEFENDANT - on the DEFENDANT'S behalf
and have not been reimbursed."

*Moreno* involved a deprivation of the use of her older truck
after the plaintiff was duped into signing a lease for a new
truck instead of buying a new truck and the removal of
accessories from the older truck by the car dealer.  Defendant
argues that *Moreno* does not support Plaintiffs here because there
is no allegation that Defendant confiscated Plaintiffs' personal
vehicles and prevented them from using it or any allegation that
Defendant removed accessories from Plaintiffs' vehicles.
Defendant contends:

> Plaintiffs have instead alleged an issue
> regarding reimbursement they now seek for the
> alleged use of their personal vehicles.  This
> is not a claim for the common law tort of
> conversion.  Plaintiffs offer the Court the

1
2
3

        opportunity to accept an absurd
misinterpretation of *Moreno* in order to apply
conversion in a way it has never been applied
before.  The Court should decline that
opportunity.

4    *O'Flaherty* entailed a wrongful withdrawal from a medical

5 partnership and the retention by the withdrawing partners of the

6 exclusive use and possession of the partnership's furniture,

7 supplies and equipment.  Defendant argues: "Such *exclusive,*

8 *wrongful possession and use* of supplies and equipment constituted

9 conversion.  But the facts of *O'Flaherty* are obviously and easily

10 distinguishable from the alleged facts in this litigation[,]" for

11 the reason that the taking of tangible personal property was in

12 dispute.

13    Plaintiffs cite *Cortez v. Purolator*, 23 Cal.4th 163 (2000)

14 as authority that earned wages are the property of the employee

15 who has performed labor for compensation.  In *Cortez*, a former

16 employee brought an action against her former employer for

17 failure to pay overtime wages.  Plaintiff sought overtime pay

18 that had accrued as a result of the failure of defendant's

19 predecessor company to comply with certain regulations when it

20 changed its workers' weekly schedules from five 8-hour days to

21 four 10-hour or longer days.  In addition to her individual cause

22 of action, plaintiff prosecuted an Unfair Competition Law (UCL)

23 claim for unfair business practice seeking restitution of the

24 overtime wages withheld from her and other employees.  In

25 pertinent part, the California Supreme Court ruled:

26        We conclude that orders for payment of wages

unlawfully withheld from an employee are also
a restitutionary remedy authorized by
[Business and Professions Code] section
17203.  The employer has acquired the money
to be paid by means of an unlawful practice
that constitutes unfair competition as
defined by section 17200.  The employee is,
quite obviously, a 'person in interest' (§
17203) to whom that money may be restored.
The concept of restoration or restitution, as
used in the UCL, is not limited to the return
of money or property that was once in the
possession of that person.  The commonly
understood meaning of 'restore' includes a
return of property to a person from whom it
was acquired ..., but earned wages that are
due and payable pursuant to section 200 et
seq. of the Labor Code are as much the
property of the employee who has given his or
her labor to the employer in exchange for
that property as is property a person
surrenders through an unfair business
practice.  An order that earned wages be paid
is therefore a restitutionary remedy
authorized by the UCL.  The order is not one
for payment of damages.  The Court of Appeal
concluded that a claim for wages owed is not
a damage claim in holding that claims for
wages earned but not paid are not damage
claims subject to the claim filing
requirement of Government Code section 905 in
*Loehr v. Ventura County Community College
Dist.* (1983) 147 Cal.App.3d 1071, 1080 ...
('Earned but unpaid salary or wages are
vested property rights, claims for which may
not be properly characterized as actions for
monetary damages.').  Because equity regards
that which ought to have been done as done
(Civ. Code § 3529), and thus recognizes
equitable conversion (*Parr-Richmond
Industrial Corp. v. Boyd* (1954) 43 Cal.2d
157, 165-166 ..., we also conclude that
unlawfully withheld wages are property of the
employee within the contemplation of the UCL.
Our conclusion that these wages may be the
subject of a restitutionary order under
section 17203 is consistent with our
recognition in *Walnut Creek Manor v. Fair
Employment & Housing Com.* (1991) 54 Cal.3d
245, 263 ..., that restitutionary awards
encompass quantifiable sums one person owes

> to another, and with that of the United States Supreme Court in *Curtis v. Loether* (1974) 415 U.S. 189, 197 ..., that backpay may be a form of restitution.
>
> We are satisfied therefore, that an order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in section 17203 for orders necessary to restore to a person in interest money or property acquired by means of an unfair business practice.

23 Cal.4th at 177-178.

Defendant argues that *Cortez* cannot be read as approval for a claim of conversion by employees for unpaid wages.  Defendants correctly contend that there is no discussion in *Cortez* of the common law tort of conversion and only a single reference to "equitable conversion".  Neither *Cortez* nor the cases cited in *Cortez* involve the common law tort of conversion.

Defendant moves to dismiss the Twelfth Cause of Action on the ground that it does not state a cognizable theory of relief as a matter of law.  However, Defendant does not identify a California case that holds a cause of action for conversion cannot be stated by employees against their employer for failure to pay wages as required by law.

Defendant provides authority from other jurisdictions. *Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95 (1980), involved a claim by an employee against the employer for withholding money from the employee's wages without authorization.  In holding that the employer's action did not constitute the tort of conversion, the Court ruled:

It has been uniformly held that conversion is
an unauthorized assumption and exercise of
the right of ownership over goods or personal
chattels belonging to another ... We note
also that:

> 'An action will not lie for
> conversion of a mere debt or chose
> in action.  Hence, where there is
> no obligation to return identical
> money, but only a relationship of
> debtor and creditor, an action for
> conversion of the funds
> representing the indebtedness will
> not lie against the debtor.' ....

605 P.2d at 99.  In *Erlich v. Howe,* 848 F.Supp. 482

(S.D.N.Y.1994), a former partner brought an action against his

law firm, alleging that his discharge violated ERISA and COBRA,

and, *inter alia,* alleged a claim for conversion of his deferred

compensation.  In dismissing the conversion claim, the District

Court held in pertinent part:

> This claim is one for conversion of monies
> owed to Ehrlich under the [Partnership]
> Agreement.  An action for conversion of money
> is insufficient as a matter of law unless it
> is alleged that the money converted was in
> specific tangible funds of which the claimant
> was the owner and entitled to immediate
> possession.  An action of conversion does not
> lie to enforce a mere obligation to pay
> money.

848 F.Supp. at 492.  In *Huff v. Biomet, Inc.*, 654 N.E.2d 830

(1995), an executrix of an employee's estate brought an action

against the employer for violating the Indiana Wage Payment

Statute and for conversion.  In affirming the trial court's

dismissal of the conversion claim, the Indiana Court held in

pertinent part:

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

      To constitute the tort of conversion there must be an appropriation of the personal property of another ... Money may be the subject of an action for conversion, so long as it is capable of being identified as a special chattel ... The money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose ... The refusal to pay a debt will generally not support a conversion action ....

      ...

      Here, Huff [the executrix] seeks payment of money which was allegedly withheld from Carrell's [the employee] commissions.  Huff alleges no facts which would indicate that Carrell entrusted money to Biomet for a particular purpose.  Moreover ..., Huff has not shown that Biomet retained specific funds which could be directly attributed to Carrell.  The facts alleged in Huff's complaint do not support a claim for conversion.

654 N.E.2d at 836.

    Plaintiffs argue that these cases are not dispositive because Plaintiffs have alleged they have earned a specific amount, or have expended a specific amount for which reimbursement is due, and for which they are entitled to under California labor laws, and that these "specific tangible amounts, wages that are the property of Plaintiffs and reimbursement of expenses were converted by Defendants for its own use."

    As to Defendant's claim Plaintiffs must prove that Defendant is obligated to return a specific sum capable of identification, i.e., a specified fund, Plaintiffs argue Defendant is equitably estopped to make such an assertion at the pleading stage. Plaintiffs assert that Defendant controls this information and

17

has denied Plaintiffs' access to the documents after Plaintiffs

made a request for them pursuant to California Labor Code § 226.

California Labor Code § 226(a) requires an employer to

provide itemized written statements semimonthly or at the time of

payment of wages showing, *inter alia*, gross wages earned; total

hours worked (unless salaried and exempt from overtime); the

number of piece-rate units earned and applicable piece-rate if

employee paid on a piece-rate basis; all deductions; net wages

earned; the inclusive dates of the period for which the employee

is paid; and all applicable hourly rates in effect during the pay

period and the corresponding number of hours worked at each

hourly rate by the employee.  Section 226(b) requires the

employer to keep the information described in Section 226(a) and

to afford current and former employees the right to inspect and

copy the records upon reasonable request to the employer.

Section 226(c) provides that an employer who receives an oral or

written request to inspect or copy the records shall comply as

soon as practicable, but no later than 21 calendar days from the

date of the request.

Plaintiffs refer to the following allegations of Paragraph

22 of the Complaint, incorporated by reference into the Twelfth

Cause of Action:

> a.  failing to pay premium overtime wages for
> hours worked in excess of 8 hours in one day,
> 40 hours in a workweek, and on the seventh
> day of a workweek without overtime pay;
>
> b. failing to pay minimum wages for all hours
> worked;

18

                    c. failing to pay accrued vacation wages

                    ...

                    l. failing to pay all earned wages and/or
                    premium wages due and owing at the time that
                    any Class member's employment with DEFENDANT
                    terminated ....

Plaintiffs state that further discovery will reveal the specific

sum amount of wages that were converted by Defendant's actions.

Because such documents are in the exclusive possession of

Defendant, such sums are "capable of identification".

    Defendant responds that "allegedly unpaid wages are a

category of damages which are *categorically* unavailable through a

tort action for conversion."  Therefore, Defendant contends:

                    The important legal point for the Court not
                    to lose sight of is that it is the
                    *categorical* nature of the allegedly unpaid
                    wages - not their alleged or unalleged amount
                    - that prevents them from constituting the
                    'specific fund' required to state a tort for
                    conversion.  Unpaid wages are not a specific
                    fund.

                    Plaintiffs' erroneous arguments based on
                    allegations of non-access to documents also
                    help to point out some of the hidden dangers
                    in accepting their unprecedented theory of
                    conversion ... [T]he Court may notice that
                    the Opposition tends to obscure one of the
                    major categories of unspecified allegedly
                    unpaid wages that Plaintiffs seek to recover
                    - allegedly unpaid wages predicated on
                    allegations of missed meal and rest periods.
                    Quantification of any allegedly missed meal
                    and rest periods over an extended time period
                    is a matter that may turn on the vagaries of
                    testimony, the problems of human memory, the
                    willingness of some persons to offer self-
                    serving but inaccurate testimony, and other
                    related problems.  Does the potential for
                    such discovery now mean that a conversion
                    claim alleging meal and rest period

                                19

1    violations can never be dismissed?  It cannot
     be so, under existing law.  Plaintiffs'
2    theory of the common law tort of conversion
     would stretch the tort far beyond any past
3    conception of it by seeking to include
     recovery of alleged meal and rest period
4    violations.  This example helps to further
     underscore the new kinds of unanticipated
5    problems that this Court could be opening up,
     if it were to seriously entertain any notion
6    of now extending the common law tort of
     conversion in the unprecedented manner
7    Plaintiffs' request.

8        Plaintiffs here seek to extend the California law of

9    conversion into the wage and hour field in a context unrecognized

10   by existing state law.  Well-reasoned cases from other

11   jurisdictions explain why unliquidated and unpaid employment

12   compensation does not constitute the requisite personal property

13   or chattels, capable of conversion.  When the law of a state is

14   silent, the District Court is to endeavor to predict what the

15   Supreme Court of the state will decide.  *See Vernon v. City of

16   Los Angeles*, 27 F.3d 1385, 1391 (9th Cir.), *cert. denied*, 513

17   U.S. 1000 (1994)("Where the state supreme court has not spoken on

18   an issue presented to a federal court, the federal court must

19   determine what result the state supreme court would reach based

20   on state appellate court opinions, statutes, and treatises.").

21       Based on the absence of any California authority, the

22   reasoning of the out-of-state cases, and the comprehensive

23   remedial scheme protecting employees under California and federal

24   law, the conversion theory proffered by Plaintiffs is an idea

25   whose time has not come.  There is no reason to extend tort law

26   into a field comprehensively regulated by federal and state wage

1  and hour laws.

2      Plaintiff requests leave to amend, subject to the

3  requirements of Rule 11, Federal Rules of Civil Procedure.  Given

4  Plaintiffs' representation that the Twelfth Cause of Action can

5  be amended to state a claim in compliance with Rule 11, leave to

6  amend is GRANTED.

7                          <u>CONCLUSION</u>

8      For all the reasons stated above, Defendants' motion to

9  dismiss the Twelfth Cause of Action is GRANTED WITH LEAVE TO

10  AMEND.  Plaintiffs shall file a First Amended Complaint in

11  accordance with this Order within 14 days of the filing date of

12  this Order.

13      IT IS SO ORDERED.

14  **Dated:  <u>May 31, 2007</u>**          <u>/s/ Oliver W. Wanger</u>
                                    UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

                              21