1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT FOR THE

7                      EASTERN DISTRICT OF CALIFORNIA

8

9  ENRIQUE VASQUEZ and JUAN      )      No. CV-F-07-227 OWW/DLB
   ANDRES RUIZ on behalf of a    )
10 class of similarly situated   )      ORDER GRANTING DEFENDANT'S
   employees,                    )      MOTION TO DISMISS
11                               )      PLAINTIFFS' TWELFTH CAUSE OF
                                 )      ACTION WITH LEAVE TO AMEND
12              Plaintiffs,      )      (Doc. 11)
                                 )
13         vs.                   )
                                 )
14                               )
                                 )
15 COAST VALLEY ROOFING INC. dba )
   COAST ROOFING,                )
16                               )
                                 )
17              Defendant.       )
                                 )
18 _____)

19      Plaintiffs' Complaint is brought as a class action on behalf

20 of Plaintiffs and former non-exempt employees of Defendant.

21 Paragraph 22 of the Complaint alleges that Defendant has

22 maintained and enforced against its non-exempt employees, the

23 following unlawful practices and polices in violation of

24 California and federal wage and hour laws:

25              a.  failing to pay premium overtime wages for
                hours worked in excess of 8 hours in one day,
26              40 hours in a workweek, and on the seventh

                               1

day of a workweek without overtime pay;

b. failing to pay minimum wages for all hours worked;

c. failing to pay accrued vacation wages

d. failing to permit rest periods of at least (10) minutes per four (4) hours worked or major fraction thereof and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided;

e. failing to provide, to work at least five (5) hours without a meal period and failing to pay such employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period was not provided;

f. failing to provide accurate itemized wage statements;

g. failing to maintain accurate time-keeping records;

h. failing to reimburse employees for expenses reasonably incurred;

i. failing to pay wage deductions to the proper state and federal authorities;

j. failing to compensate for all hours worked at hourly wage rates above the minimum wage rate;

k. requiring employees to report to work but not putting employees to work or furnishing less than half their usual or scheduled day's work, and while paying less than half the usual or scheduled day's work at their regular rate of pay;

l. failing to pay all earned wages and/or premium wages due and owing at the time that any Class member's employment with DEFENDANT terminated;

m. refusing to pay all wages when due;

2

1        n. charging employees to rent equipment
    needed to complete tasks for the benefit of
2        the employer; and

3        o. failing to timely permit inspection and/or
    copying of employment records requested by
4        employees.

5    The Twelfth Cause of Action is for Conversion.  After

6    incorporating all preceding allegations, the Twelfth Cause of

7    Action alleges:

8        117.  PLAINTIFFS and the Class labored for
    and was subject to the control of DEFENDANT
9        and was permitted and/or required to suffer
    work, all for the benefit of DEFENDANT, and
10       earned wages lawfully belonging to PLAINTIFFS
    and the Class.  PLAINTIFFS also made
11       reasonable expenditures - including the
    provision of vehicles and equipment, and even
12       the renting of equipment from DEFENDANT - on
    the DEFENDANT'S behalf and have not been
13       reimbursed.  DEFENDANT converted to it's own
    use the lawful wages and monies of PLAINTIFFS
14       and the class by unlawfully requiring them to
    work at hourly and/or piece rates below the
15       minimum wage and converting minimum wages due
    to DEFENDANT'S own use, failing to pay
16       overtime premium and converting overtime
    wages due to DEFENDANT'S own use; failing to
17       provide rest and meal periods without
    compensating non-exempt employees one hour's
18       pay for each instance such periods were not
    provided, failing to reimburse employees for
19       expenditures taken on the employer's behalf
    and the other violations described in this
20       complaint and converted said monies and labor
    DEFENDANT'S [sic] own use.
21
    118.  As a result of the unlawful acts of
22       DEFENDANT, PLAINTIFFS and the Class have been
    deprived of wages in amounts to be determined
23       at trial, and are entitled to recovery of
    such amounts, punitive damages, and other
24       equitable relief.

25       Defendant moves to dismiss the Twelfth Cause of Action

26   pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure,

1  contending that the cause of action does not state a cognizable

2  legal theory.

3      A.  <u>Governing Standards</u>.

4      A motion to dismiss under Rule 12(b)(6) tests the

5  sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,

6  732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is

7  appropriate only where "it appears beyond doubt that the

8  plaintiff can prove no set of facts in support of his claim which

9  would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-

10 46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the

11 complaint lacks a cognizable legal theory or where the complaint

12 presents a cognizable legal theory yet fails to plead essential

13 facts under that theory.  *Robertson v. Dean Witter Reynolds,*

14 *Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to

15 dismiss under Rule 12(b)(6), the court must assume the truth of

16 all factual allegations and must construe all inferences from

17 them in the light most favorable to the nonmoving party.

18 *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,

19 legal conclusions need not be taken as true merely because they

20 are cast in the form of factual allegations.  *Ileto v. Glock,*

21 *Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  Immunities and other

22 affirmative defenses may be upheld on a motion to dismiss only

23 when they are established on the face of the complaint.  *See*

24 *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v.*

25 *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling

26 on a motion to dismiss, the court may consider the facts alleged

4

in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

    B.  <u>Merits of Motion</u>.

    Defendant contends that the Twelfth Cause of Action for conversion is simply an effort to recast statutory wage and hour claims as a tort in order to recover tort damages.

    As explained in *Farmers Inc. Exchange v. Zerin*, 53 Cal.App.4th 445, 451 (1997):

> 'Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied to property to his own use ....' ... Money can be the subject of an action for conversion if a specific sum capable of identification is involved ....

> Neither legal title nor absolute ownership of the property is necessary ... A party need only allege it is 'entitled to immediate *possession at the time of conversion* ...' ... However, a mere contractual right of payment, without more, will not suffice.

    Defendant argues that Plaintiffs have not stated a cognizable claim for conversion because generalized claims for unspecified sums of money or indebtedness are not cognizable as

conversion.    Defendant relies on *Farmers Ins. Exchange v. Zerin*, *supra*, and *Vu v. California Commerce Club*, 58 Cal.App.4th 229 (1997).

In *Farmers Ins. Exchange*, the insurance company issued separate policies of automobile insurance to Joseph Stewart and Linda Kendrick, which provided for the payment of medical benefits in the event of an accident in which the insured or another covered person is injured.    Both insureds were involved in automobile accidents in which the insureds and other were injured.    Claims for medical benefits were submitted and the insurance company paid the claims.    The policies issued to the insureds contained the provision: "When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment ...."    The insureds hired attorney Zerin to represent them in their claims against third party tortfeasors responsible for their injuries.    The insurance company notified Zerin of the policy provisions requiring reimbursement upon recovery from third parties.    Zerin thereafter received payments from the third party tortfeasors on behalf of the insureds but failed to pay any portion of the recovery to Farmers, disbursing the funds instead to himself and others.    53 Cal.App.4th at 450.    On appeal, Farmers argued that it had a sufficient property interest in the third party recoveries by virtue of the policies' provisions which created an actual or equitable lien on the funds, citing

6

cases holding that "[o]ne who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion."  *Id.* at 452.  The Court of Appeals then discussed cases involving equitable liens, noting that "[a] promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund" and discussing other issues relevant to the creation of equitable liens, *Id.* at 453-456, and concluded that "[o]n the bare allegations of the complaint, this matter appears to be nothing more than an attempt by Farmers to avoid the necessity of seeking repayment from the parties primarily responsible by simply giving notice to their personal representative".  The Court of Appeal thus upheld the demurrer to the insurance company's claim for conversion.

In *Vu v. California Commerce Club, Inc.*, two card players brought an action against a card club to recover moneys lost while playing card games at the club, the plaintiffs alleging that their losses were the result of other players' cheating and a breach of the card club's implied contractual obligations to them.  The Court of Appeal held that the trial court properly granted summary judgment for the card club on the cause of action for conversion and conspiracy to commit conversion:

> The subject of these causes of action, and the damages alleged in them, once again were the funds plaintiffs lost.  But neither by pleading nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them.  That rendered the generalized claim for money not actionable as

1            conversion ... Indeed, the gist of
plaintiffs' case was that much of the money
2            they lost was taken by persons other than the
club or its employees.  Any amounts the club
3            may have taken (e.g., Pan-Nine bets
confiscated upon discovery of cheating) also
4            were not identified.

5  58 Cal.App.4th at 235.

6     Relying on these two cases, Defendants argue that

7  Plaintiffs' conversion cause of action does not relate to a

8  "specified fund":

9            Plaintiffs have simply alleged that Defendant
owes them what they contend amount to wages
10           and/or unreimbursed expenses under Labor Code
section 203 (and other Code sections) because
11           of violations of the specified Labor Code
sections.  These allegations may establish a
12           statutory or property right to payment, but
is not the specified fund essential to plead
13           a claim for conversion of money.

14     Defendants further contend that the California Labor Code

15  provides statutory remedies for employees to seek unpaid wages

16  and that common law remedies are not generally available in

17  actions to recover wages.

18     Defendants cite *Oppenheimer v. Robinson*, 150 Cal.App.2d 420,

19  422-423 (1957).  However, there is no such holding in this case

20  or any discussion that common law remedies are not generally

21  available in actions to recover wages.  Therefore, Defendants'

22  contention is not supported by authority.

23     Plaintiffs cite *Department of Industrial Relations v. UI*

24  *Video Stores, Inc.*, 55 Cal.App.4th 1084 (1997) as authority that

25  a claim for conversion can be stated as well as statutory claims

26  for unpaid wages.  There, the Department of Industrial Relations

(DLSE) brought an action against an employer seeking reimbursement for the cost of uniforms the employer had required its employees to furnish in violation of law.  The DLSE and the employer entered into a settlement agreement whereby the employer agreed to deliver to the DLSE checks made payable to each affected employee.  Rather than comply with the settlement agreement, the employer mailed the checks directly to the employees.  A number of the checks were returned as undeliverable.  The employer eventually turned over the undelivered checks to the DLSE, but instructed its bank not to honor them, asserting that it had complied with the settlement agreement and intended to keep the funds equal to the undeliverable checks.  The DLSE filed a complaint against the employer for breach of the settlement agreement and conversion of the checks.  The trial court granted summary judgment for the employer and the Court of Appeals reversed.  With regard to DLSE's claim for conversion, the Court of Appeal held:

> The DLSE's second cause of action alleged that the DLSE had the right to immediate possession of the checks and that Blockbuster unlawfully converted the checks to its own use ... Blockbuster argues that the DLSE has no right to exercise dominion and control of the checks, that Blockbuster is willing to issue a new check if the missing employee is located, and that appellant suffered no damages because it has no right to deposit the checks.

> The issues of DLSE's authority and Blockbuster's theory of lack of damages have been resolved by our discussion of the DLSE's statutory and contractual authority to collect wages on behalf of the employees

> **absent an actual assignment.  Furthermore, the DLSE need not possess legal title to the property at issue to support a cause of action for conversion.  A person without legal title to property may recover from a converter if the plaintiff is responsible to the true owner, such as in the case of a bailee or pledgee of the property ... The DLSE, which is empowered by section 96.7 to collect and deposit unpaid benefits, has such an interest.  It was error to grant summary judgment on this cause of action.**

**55 Cal.App.4th at 1096.**

Plaintiffs acknowledge that *UI Video Stores, Inc.* is not on point authority supporting their claim for conversion, but contend that the decision demonstrates that a conversion cause of action may be brought for recovery of unpaid wages, including reimbursement of employee expenses.  Although the viability of the conversion claims was not at issue in either case, Plaintiffs also cite *Singh v. Superior Court*, 140 Cal.App.4th 387 (2006) and *Smith v. Superior Court*, 39 Cal.4th 77 (2006) to suggest the "common practice" under California labor law is to bring conversion claims as well as California Labor Code wage and hour claims.

Defendants rejoin that *UI Video, Inc.* is not authority that the Plaintiffs can state a cause of action for conversion for unpaid wages, because that conversion claim was based on the employer's retention of undeliverable checks that DLSE had an interest in, in violation of the settlement agreement with the DLSE.  Defendants further argue that the Plaintiffs' cases cited to demonstrate the alleged "common practice" of asserting

10

conversion as well as statutes as a basis for recovery of unpaid wages, do no such thing:

> [U]nless this alleged 'common practice' has been recognized judicially as legitimate, then this assertion may amount to nothing more that the assertion that plaintiffs attorneys [sic] have made a 'common practice' of throwing in an appropriate (if not indeed frivolous) conversion claim with their wage and hour pleadings.

At the hearing, Plaintiffs argued that because Blockbuster had ordered its bank not to honor the undeliverable checks and intended to maintain sufficient funds to cover those amounts, *UI Video, Inc.* involved a general fund as opposed to a specified fund.

Plaintiffs' contention is meritless.  The specified fund was the amount set forth in the Settlement Agreement.  Checks were to be drawn against that specified fund and delivered to the DLSE for transmittal to the employees.  The conversion occurred because Blockbuster failed to turn over to the DLSE the undeliverable checks as required by the Settlement Agreement, instead using those funds for Blockbuster's own use.

Plaintiffs argue that Paragraph 117 of the Complaint pleads their ownership or right to possession of personal property because personal vehicles, equipment and earned wages are all property rights of the Plaintiffs.  Plaintiffs rely on *Moreno v. Greenwood Auto Center*, 91 Cal.App.4th 201, 210 (2001)(individual sued a car dealer for conversion of an older truck and recovered damages based on her belief she was trading in her old truck and

11

buying a newer truck, when in fact she executed a lease agreement for the newer truck); *O'Flaherty v. Belgum*, 115 Cal.App.4th 1044, 1079 (2004)(dissenting opinion)("The withdrawing partners did not reimburse OB for the reasonable value of the offices, equipment, supplies, and employees paid for by OB and used by the withdrawing partners from October 12, 1997, to December 31, 1997, to set up and promote the business of OCMOH.  This use constituted conversion of OB's property.").

Defendant replies that *Moreno* and *O'Flaherty* do not support Plaintiffs' claim for conversion based on the allegations in Paragraph 117 that "Plaintiffs also made reasonable expenditures - including the provision of vehicles and equipment, and even the renting of equipment from DEFENDANT - on the DEFENDANT'S behalf and have not been reimbursed."

*Moreno* involved a deprivation of the use of her older truck after the plaintiff was duped into signing a lease for a new truck instead of buying a new truck and the removal of accessories from the older truck by the car dealer.  Defendant argues that *Moreno* does not support Plaintiffs here because there is no allegation that Defendant confiscated Plaintiffs' personal vehicles and prevented them from using it or any allegation that Defendant removed accessories from Plaintiffs' vehicles. Defendant contends:

> Plaintiffs have instead alleged an issue regarding reimbursement they now seek for the alleged use of their personal vehicles.  This is not a claim for the common law tort of conversion.  Plaintiffs offer the Court the

12

> opportunity to accept an absurd
> misinterpretation of *Moreno* in order to apply
> conversion in a way it has never been applied
> before.  The Court should decline that
> opportunity.

*O'Flaherty* entailed a wrongful withdrawal from a medical partnership and the retention by the withdrawing partners of the exclusive use and possession of the partnership's furniture, supplies and equipment.  Defendant argues: "Such *exclusive, wrongful possession and use* of supplies and equipment constituted conversion.  But the facts of *O'Flaherty* are obviously and easily distinguishable from the alleged facts in this litigation[,]" for the reason that the taking of tangible personal property was in dispute.

Plaintiffs cite *Cortez v. Purolator*, 23 Cal.4th 163 (2000) as authority that earned wages are the property of the employee who has performed labor for compensation.  In *Cortez*, a former employee brought an action against her former employer for failure to pay overtime wages.  Plaintiff sought overtime pay that had accrued as a result of the failure of defendant's predecessor company to comply with certain regulations when it changed its workers' weekly schedules from five 8-hour days to four 10-hour or longer days.  In addition to her individual cause of action, plaintiff prosecuted an Unfair Competition Law (UCL) claim for unfair business practice seeking restitution of the overtime wages withheld from her and other employees.  In pertinent part, the California Supreme Court ruled:

> We conclude that orders for payment of wages

13

unlawfully withheld from an employee are also a restitutionary remedy authorized by [Business and Professions Code] section 17203.  The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200.  The employee is, quite obviously, a 'person in interest' (§ 17203) to whom that money may be restored. The concept of restoration or restitution, as used in the UCL, is not limited to the return of money or property that was once in the possession of that person.  The commonly understood meaning of 'restore' includes a return of property to a person from whom it was acquired ..., but earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice.  An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL.  The order is not one for payment of damages.  The Court of Appeal concluded that a claim for wages owed is not a damage claim in holding that claims for wages earned but not paid are not damage claims subject to the claim filing requirement of Government Code section 905 in *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1080 ... ('Earned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages.').  Because equity regards that which ought to have been done as done (Civ. Code § 3529), and thus recognizes equitable conversion (*Parr-Richmond Industrial Corp. v. Boyd* (1954) 43 Cal.2d 157, 165-166 ...), we also conclude that unlawfully withheld wages are property of the employee within the contemplation of the UCL. Our conclusion that these wages may be the subject of a restitutionary order under section 17203 is consistent with our recognition in *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 263 ..., that restitutionary awards encompass quantifiable sums one person owes

14

> to another, and with that of the United
> States Supreme Court in *Curtis v. Loether*
> (1974) 415 U.S. 189, 197 ..., that backpay
> may be a form of restitution.
>
> We are satisfied therefore, that an order
> that a business pay to an employee wages
> unlawfully withheld is consistent with the
> legislative intent underlying the
> authorization in section 17203 for orders
> necessary to restore to a person in interest
> money or property acquired by means of an
> unfair business practice.

23 Cal.4th at 177-178.

Defendant argues that *Cortez* cannot be read as approval for a claim of conversion by employees for unpaid wages. Defendants correctly contend that there is no discussion in *Cortez* of the common law tort of conversion and only a single reference to "equitable conversion". Neither *Cortez* nor the cases cited in *Cortez* involve the common law tort of conversion.

Defendant moves to dismiss the Twelfth Cause of Action on the ground that it does not state a cognizable theory of relief as a matter of law. However, Defendant does not identify a California case that holds a cause of action for conversion cannot be stated by employees against their employer for failure to pay wages as required by law.

Defendant provides authority from other jurisdictions. *Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95 (1980), involved a claim by an employee against the employer for withholding money from the employee's wages without authorization. In holding that the employer's action did not constitute the tort of conversion, the Court ruled:

15

> It has been uniformly held that conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another ... We note also that:
>
> > 'An action will not lie for conversion of a mere debt or chose in action.  Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.' ....

605 P.2d at 99.  In *Erlich v. Howe,* 848 F.Supp. 482 (S.D.N.Y.1994), a former partner brought an action against his law firm, alleging that his discharge violated ERISA and COBRA, and, *inter alia,* alleged a claim for conversion of his deferred compensation.  In dismissing the conversion claim, the District Court held in pertinent part:

> This claim is one for conversion of monies owed to Ehrlich under the [Partnership] Agreement.  An action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which the claimant was the owner and entitled to immediate possession.  An action of conversion does not lie to enforce a mere obligation to pay money.

848 F.Supp. at 492.  In *Huff v. Biomet, Inc.*, 654 N.E.2d 830 (1995), an executrix of an employee's estate brought an action against the employer for violating the Indiana Wage Payment Statute and for conversion.  In affirming the trial court's dismissal of the conversion claim, the Indiana Court held in pertinent part:

16

> To constitute the tort of conversion there
> must be an appropriation of the personal
> property of another ... Money may be the
> subject of an action for conversion, so long
> as it is capable of being identified as a
> special chattel ... The money must be a
> determinate sum with which the defendant was
> entrusted to apply to a certain purpose ...
> The refusal to pay a debt will generally not
> support a conversion action ....
>
> ...
>
> Here, Huff [the executrix] seeks payment of
> money which was allegedly withheld from
> Carrell's [the employee] commissions.  Huff
> alleges no facts which would indicate that
> Carrell entrusted money to Biomet for a
> particular purpose.  Moreover ..., Huff has
> not shown that Biomet retained specific funds
> which could be directly attributed to
> Carrell.  The facts alleged in Huff's
> complaint do not support a claim for
> conversion.

654 N.E.2d at 836.

Plaintiffs argue that these cases are not dispositive because Plaintiffs have alleged they have earned a specific amount, or have expended a specific amount for which reimbursement is due, and for which they are entitled to under California labor laws, and that these "specific tangible amounts, wages that are the property of Plaintiffs and reimbursement of expenses were converted by Defendants for its own use."

As to Defendant's claim Plaintiffs must prove that Defendant is obligated to return a specific sum capable of identification, i.e., a specified fund, Plaintiffs argue Defendant is equitably estopped to make such an assertion at the pleading stage. Plaintiffs assert that Defendant controls this information and

17

1   has denied Plaintiffs' access to the documents after Plaintiffs

2   made a request for them pursuant to California Labor Code § 226.

3        California Labor Code § 226(a) requires an employer to

4   provide itemized written statements semimonthly or at the time of

5   payment of wages showing, *inter alia*, gross wages earned; total

6   hours worked (unless salaried and exempt from overtime); the

7   number of piece-rate units earned and applicable piece-rate if

8   employee paid on a piece-rate basis; all deductions; net wages

9   earned; the inclusive dates of the period for which the employee

10  is paid; and all applicable hourly rates in effect during the pay

11  period and the corresponding number of hours worked at each

12  hourly rate by the employee.  Section 226(b) requires the

13  employer to keep the information described in Section 226(a) and

14  to afford current and former employees the right to inspect and

15  copy the records upon reasonable request to the employer.

16  Section 226(c) provides that an employer who receives an oral or

17  written request to inspect or copy the records shall comply as

18  soon as practicable, but no later than 21 calendar days from the

19  date of the request.

20       Plaintiffs refer to the following allegations of Paragraph

21  22 of the Complaint, incorporated by reference into the Twelfth

22  Cause of Action:

23           a.  failing to pay premium overtime wages for
             hours worked in excess of 8 hours in one day,
24           40 hours in a workweek, and on the seventh
             day of a workweek without overtime pay;
25
             b. failing to pay minimum wages for all hours
26           worked;

1              **c. failing to pay accrued vacation wages**

2              **...**

3              **l. failing to pay all earned wages and/or**
               **premium wages due and owing at the time that**
4              **any Class member's employment with DEFENDANT**
               **terminated ....**
5
**Plaintiffs state that further discovery will reveal the specific**
6
**sum amount of wages that were converted by Defendant's actions.**
7
**Because such documents are in the exclusive possession of**
8
**Defendant, such sums are "capable of identification".**
9
      **Defendant responds that "allegedly unpaid wages are a**
10
**category of damages which are *categorically* unavailable through a**
11
**tort action for conversion."   Therefore, Defendant contends:**
12
        **The important legal point for the Court not**
13             **to lose sight of is that it is the**
               ***categorical* nature of the allegedly unpaid**
14             **wages - not their alleged or unalleged amount**
               **- that prevents them from constituting the**
15             **'specific fund' required to state a tort for**
               **conversion.   Unpaid wages are not a specific**
16             **fund.**

17             **Plaintiffs' erroneous arguments based on**
               **allegations of non-access to documents also**
18             **help to point out some of the hidden dangers**
               **in accepting their unprecedented theory of**
19             **conversion ... [T]he Court may notice that**
               **the Opposition tends to obscure one of the**
20             **major categories of unspecified allegedly**
               **unpaid wages that Plaintiffs seek to recover**
21             **- allegedly unpaid wages predicated on**
               **allegations of missed meal and rest periods.**
22             **Quantification of any allegedly missed meal**
               **and rest periods over an extended time period**
23             **is a matter that may turn on the vagaries of**
               **testimony, the problems of human memory, the**
24             **willingness of some persons to offer self-**
               **serving but inaccurate testimony, and other**
25             **related problems.   Does the potential for**
               **such discovery now mean that a conversion**
26             **claim alleging meal and rest period**

violations can never be dismissed?  It cannot
be so, under existing law.  Plaintiffs'
theory of the common law tort of conversion
would stretch the tort far beyond any past
conception of it by seeking to include
recovery of alleged meal and rest period
violations.  This example helps to further
underscore the new kinds of unanticipated
problems that this Court could be opening up,
if it were to seriously entertain any notion
of now extending the common law tort of
conversion in the unprecedented manner
Plaintiffs' request.

Plaintiffs here seek to extend the California law of

conversion into the wage and hour field in a context unrecognized

by existing state law.  Well-reasoned cases from other

jurisdictions explain why unliquidated and unpaid employment

compensation does not constitute the requisite personal property

or chattels, capable of conversion.  When the law of a state is

silent, the District Court is to endeavor to predict what the

Supreme Court of the state will decide.  *See Vernon v. City of*

*Los Angeles*, 27 F.3d 1385, 1391 (9th Cir.), *cert. denied*, 513

U.S. 1000 (1994)("Where the state supreme court has not spoken on

an issue presented to a federal court, the federal court must

determine what result the state supreme court would reach based

on state appellate court opinions, statutes, and treatises.").

Based on the absence of any California authority, the

reasoning of the out-of-state cases, and the comprehensive

remedial scheme protecting employees under California and federal

law, the conversion theory proffered by Plaintiffs is an idea

whose time has not come.  There is no reason to extend tort law

into a field comprehensively regulated by federal and state wage

and hour laws.

Plaintiff requests leave to amend, subject to the requirements of Rule 11, Federal Rules of Civil Procedure.  Given Plaintiffs' representation that the Twelfth Cause of Action can be amended to state a claim in compliance with Rule 11, leave to amend is GRANTED.

<u>CONCLUSION</u>

For all the reasons stated above, Defendants' motion to dismiss the Twelfth Cause of Action is GRANTED WITH LEAVE TO AMEND.  Plaintiffs shall file a First Amended Complaint in accordance with this Order within 14 days of the filing date of this Order.

IT IS SO ORDERED.

Dated:   **May 31, 2007**           _____/s/ Oliver W. Wanger_____
                                    UNITED STATES DISTRICT JUDGE