UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUEZ VASQUEZ and JUAN ANDRES RUIZ on behalf of a class of similarly situated employees,<br><br>                    Plaintiffs,<br><br>          v.<br><br>COAST VALLEY ROOFING, INC., dba COAST ROOFING, and FRANCIS DOMINIC GIANGROSSI,<br><br>                    Defendants. | 1:07-CV-00227 OWW DLB<br><br>MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' REQUEST FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOC. 52). |

I. <u>INTRODUCTION</u>

Plaintiffs Enriquez Vasquez and Juan Andres Ruiz brought this action on behalf of themselves and approximately 150 current and former roofing workers employed by Defendants Coast Roofing, Inc. ("Coast") and Francis Dominic Giangrossi, alleging violations of federal and state wage-and-hour laws. *See* First Amended Class Action Complaint ("FAC"), filed Sept. 19, 2007, Doc. 23. Before the court for decision is Plaintiffs' motion for preliminary approval of the terms of a negotiated Class Action Settlement. Doc. 52. No opposition to the motion has been received.

1

## II. FACTUAL BACKGROUND

A.   **Summary of the Litigation.**

The FAC alleges that Coast failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to provide all legally required meal periods and rest breaks; failed to provide accurate, itemized employee wage statements; and failed to compensate employees for travel time and mileage.  The FAC sought to certify a class composed of Plaintiffs and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.

Plaintiffs' counsel reviewed employee records gathered pursuant to pre-litigation non-discovery methods provided by California Labor Code section 226, interviewed numerous witnesses, and reviewed hundreds of pages of documents from employees before filing the complaint.  Mallison Decl., Doc. 54, at ¶¶ 36-38.  After the complaint was filed, Plaintiffs conducted substantial discovery and non-discovery investigation regarding class certification and the merits of their claims.  *Id.*

B.   **Summary of the Settlement.**

1.   **The Gross Settlement Payment.**

Under the Settlement, Coast will make a Gross Settlement Payment of $300,000.  This payment will cover Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; a $10,000 payment to the California

Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses (estimated to be less than $25,000); and (subject to court approval) payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each in compensation of their services as Class Representatives and payments to Class Counsel of up to $100,000 for their reasonable attorneys' fees and up to $10,000 in expenses. *See* Settlement Agreement ("Settlement") § III.A-C, attached to Mallison Decl. at Ex. 1, Doc. 54-2.  There will be no reversion of the Gross Settlement Payment to Coast.

    2.   <u>Payment of Settlement Shares.</u>

After the other amounts are deducted, the Gross Settlement Amount (termed the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims, based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

Settlement § III.D.1.  The formula relies upon information readily available from Coast's records and is commonly used in wage-and-hour cases.  Mallison Decl. at ¶¶ 41-42.

    3.   <u>Distribution of Unclaimed Funds and Uncashed Checks.</u>

In the event that not all Class Members submit claims, the

3

residual will be redistributed to those Class Members who do submit

valid claims.  Settlement § III.D.3.  In the event that checks issued

to Class Members are not cashed, these monies will be donated to two

public interest organizations on a 50%/50% basis: (1) the California

Rural Legal Assistance; and (2) the Boys and Girls Club of

Bakersfield.  *Id*. § III.F.10.  Donation of the residual to these

public interest organizations that serve low-income workers is

appropriate.  *See* Mallison Decl. at ¶43.

    4.   <u>Scope of the Release.</u>

The Settlement provides that all Participating Class Members

release Defendants as follows:

> As of the date of the Judgment, all Participating Class
> Members hereby fully and finally release Coast, and its
> parents, predecessors, successors, subsidiaries, affiliates,
> and trusts, and all of its employees, officers, agents,
> attorneys, stockholders, fiduciaries, other service
> providers, and assigns, from any and all claims, known and
> unknown, for or related to all claims based on or arising
> from the allegations that they were or are improperly
> compensated under federal, California, or local law (the
> "Class's Released Claims").  The Class's Released Claims
> include all such claims for alleged unpaid wages, including
> overtime compensation, missed meal-period and rest-break
> wages or penalties, and interest; related penalties,
> including, but not limited to, recordkeeping penalties, pay-
> stub penalties, minimum-wage penalties, missed meal-period
> and rest-break penalties, and waiting-time penalties; and
> costs and attorneys' fees and expenses.

Settlement § III.G.2.

    5.   <u>Objections and Opt-Out Process</u>

Any Class Member who so wishes may object to or comment on the

Settlement, or may elect not to participate in the Settlement.  The

4

Class Notice fully explains the objection/comment and opt-in procedures.  Settlement § III.F.4.

6.   <u>Termination of Settlement.</u>

The Settlement provides for confirmatory discovery to be conducted during the approval process.  Plaintiffs reserve the right to void the Settlement if this confirmatory discovery reveals any substantial variance from previous discovery or other factual representations made by defendants and relied upon by Plaintiffs as the basis for the Settlement.  Plaintiffs do not anticipate any such termination of the settlement, but are conducting this confirmatory discovery to ensure the fairness of the Settlement for the class and to fully carry out their obligations to the class and the Court.

7.   <u>Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.</u>

By a motion to be filed prior to the Final Approval Hearing, Plaintiffs and their counsel will seek (and Coast has agreed not to oppose), awards to Plaintiffs of Class Representative Payments of $5,000 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives; and a Class Counsel Attorneys' Fees Payment of not more than $100,000 (or 33-1/3% of the Gross Settlement Amount) and a Class Counsel Litigation Expenses Payment of not more than $10,000.  Settlement § III.B.1-2.  The exact amounts requested, and their justification, will be detailed in a motion, brief, and declaration to be provided in conjunction with the

5

final approval of the settlement.

### III. DISCUSSION

**A.   Preliminary Approval of a Settlement Class is Appropriate.**

In order to approve a class action settlement, a district court must first make a finding that a class can be certified. *See, e.g., Molski v. Gleich*, 318 F.3d 937, 943, 946-50 (9th Cir. 2003).  "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Pursuant to Federal Rule of Civil Procedure 23(c)(1), a court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000).  Conditional approval of the class is appropriate where the plaintiff establishes the four prerequisites of Federal Rule of Civil Procedure 23(a) -- (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation -- as well as one of the three requirements of Rule 23(b).  *See Fry,* 198 F.R.D. at 466.

Here, the proposed class is comprised of all individuals who have been employed by Coast in California as non-exempt roofing workers during the period from January 31, 2003 to July 31, 2009.  There are approximately 150 Class Members.

6

1.  <u>Numerosity.</u>

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Here, the presence of approximately 150 similarly situated Class Members satisfies the numerosity requirement.

Plaintiffs also must establish impracticability of joinder.  A court should consider "not only the class size but other factors as well, including the geographic diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *See, Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986).  The limited size of any individual plaintiff's recovery is also relevant.  *Edmondson v. Simon*, 86 F.R.D. 375, 379 (N.D. Ill. 1980).  Here, where the potential recovery by any individual plaintiff is relatively small, individual members of the class would likely be unwilling or unable to bring institute separate suits.  Moreover, the filing of individual suits by 150 separate plaintiffs would create and unnecessary burden on judicial resources.

2.   <u>Commonality.</u>

Rule 23(a) also demands "questions of law or fact common to the class."  It does not require that all questions of law or fact be common to every single member of the class.  To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class.  *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).  Commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985).  Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality.  *Armstrong*, 275 F.3d at 868 (finding commonality requirement satisfied despite individual class members having different disabilities, since all suffered similar harm as a result of defendant's actions).

Here, for purposes of the Settlement only, the parties agree that common questions of both fact and law exist regarding Coast's alleged failure to abide by federal and state wage-and-hour law, including:

- whether Coast failed to provide roofing workers with required meal periods;

- whether Coast failed to pay roofing workers wages for meal periods during which they remained on duty;

- whether Coast authorized and permitted the roofing workers to take required rest periods;

- whether Coast failed to pay roofing workers an

8

additional hour of wages for missed meal periods and
rest breaks;

- whether Coast failed to pay all legally required
  minimum wages and overtime compensation to hourly
  production workers;

- whether hourly production workers are owed waiting time
  penalties because Coast allegedly willfully failed to
  pay them additional wages for missed meal periods and
  rest breaks, and for meal periods taken during which
  they remained on duty, upon the termination of their
  employment; and

- whether Coast's business practices violated Business
  and Professions Code section 17200 et seq.

- whether Coast's failed to pay for travel time and
  mileage to roofing workers.

These common questions of law or fact are sufficient to satisfy the
commonality requirement.

   3.   Typicality.

   Rule 23(a)(3) demands "the claims or defenses of the
representative parties are typical of the claims or defenses of the
class." *Armstrong*, 275 F.3d at 868.  "Typicality ... is said ... to
be satisfied when each class member's claim arises from the same
course of events, and each class member makes similar legal arguments
to prove the defendant's liability." *Id.*  Under the rule's
"permissive standards," representative claims are typical if they are
"reasonably co-extensive with those of absent class members; they need
to be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d
1011, 1020 (9th Cir. 1998).  Plaintiffs' claims are essentially
identical to those of the class as whole, as they are all roofing
workers who were paid under the same pay practices.  The typicality

requirement is satisfied.

    4.   <u>Adequacy of Representation.</u>

    The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The adequacy of representation requirement is met here because Plaintiffs have the same interests as the remaining members of the Settlement Class, i.e. obtaining payment for wages unlawfully withheld; there is no apparent conflict between the named Plaintiffs' claims and those of the other Class Members; and Plaintiffs are represented by experienced and competent counsel who has experience in litigating over 40 wage and hour class action cases.

    5.   <u>Rule 23(b)(3).</u>

    Having satisfied the prerequisites set forth in Rule 23(a), Plaintiffs must also satisfy one of the three provisions of Rule 23(b). The parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members,

and…a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

B.   Conditional Certification of an FLSA Collective Action.

Section 216(b) of the FLSA allows employees to represent similarly situated co-workers in an action against their employer for failure to pay wages owed.  29 U.S.C. § 216(b) ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").  The decision to certify an FLSA collective action is within the discretion of the Court.  *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006).  The FLSA does not define the term "similarly situated," and the Ninth Circuit Court of Appeals has not construed it.  *Singleton v. Adick*, 2009 WL 3710717, *4 (D. Ariz. Nov. 2, 2009).

*Singleton* succinctly summarized the relevant analytical approach:

> Courts have taken at least three different approaches to analyzing the issue: "(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions." [*Wood v. Trivita, Inc.*, 2009 WL 2046048 at *2 (D. Ariz. Jan. 22, 2009).]  The majority of courts have adopted the two-tiered approach.  *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Edwards*, 467 F. Supp. 2d at 990; *Hutton v. Bank of America*, 2007 WL 5307976 at *1 (D. Ariz. March 31, 2007)....
>
> Under the two-tiered approach, during the early stages of litigation, the Court evaluates the case under a lenient standard and may grant conditional certification.  *Hipp*, 252

11

F.3d at 1217.  The Court then reevaluates, usually prompted by a motion for decertification, the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims. *Id*. at 1217-18.

At the early stage, or the "notice stage," the Court makes the "similarly situated" decision based on the pleadings and any Declarations that have been submitted.  *Id*. at 1218 (citing *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213-14 (5th Cir. 1995)). Because the Court does not have much evidence at this stage, the Court uses a fairly lenient standard.  *Id*.  The second determination, under a stricter standard, is based on much more information, which makes a factual determination possible. *Id.*; *Wood*, 2009 WL 2046048 at *3.  At the second stage, the Court reviews several factors, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001).  At all times, Plaintiffs have the burden of proving they meet the "similarly situated" requirement.  *See Hipp*, 252 F.3d at 1217.

*Singleton*, 2009 WL 3710717, *4.

Here, at the preliminary stage of FLSA collective action certification, it is sufficient that Plaintiffs and Class Members allege that Coast had a common practice of failing to pay all legally required minimum wages and overtime compensation to hourly production workers.  Subject to final approval at a later date, conditional certification of a settlement class under the FLSA is appropriate.

C.  <u>Preliminary Approval of the Settlement Is Appropriate.</u>

"The court must approve any settlement ... of the claims ... of a certified class."  Fed. R. Civ. P. 23(e)(1)(A).  The court may approve a settlement only after a hearing and on finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(1)(C).  Such approval

12

is required to make sure that any settlement reached is consistent with plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The court also serves as guardian for the absent class members who will be bound by the settlement, and therefore must independently determine the fairness of any settlement. *Id.* However, the district court's role in intruding upon what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 (9th Cir. 1996). Therefore, the settlement hearing is not to be turned into a trial or rehearsal for trial on the merits. *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice. *Id.*

    In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors: (1) the strength of the Plaintiff's case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views

and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant. *Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234,1242 (9th Cir.1998). This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In addition, where the payment of attorney's fees is also part of the negotiated settlement, the fee settlement must be evaluated for fairness in the context of the overall settlement. *Kinsely v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation, Third (Fed. Judicial Center 1995) ("Manual") § 30.41). The Manual's settlement approval procedure describes three distinct steps:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected Class Members; and
>
> (3) A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.* § 30.41.

Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be

14

the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)(citing Manual for Complex Litigation, Second § 30.44 (1985)). "In addition, the court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." *Id*. (citing Newberg on Class Actions § 11.25 (1992)).

    1.   <u>The Settlement Was the Product of Informed, Non-Collusive Negotiations.</u>

    The Settlement was reached after informed, arm's length negotiations between the parties.  Both parties, through independent counsel of their choice, conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case.  As such, the Settlement is the product of non-collusive negotiations.  *See* Mallison Decl. at ¶¶ 48-56.

    2.   <u>The Proposed Settlement Has No "Obvious Deficiencies."</u>

    The settlement provides for a payment of $300,000.00 by Coast, a substantial recovery given the relatively small size of the class (150 members) and the limited nature of the alleged hourly wage violations at issue.  The average settlement share is approximately $1000.00.  All Settlement Shares to be paid under the Settlement are determined

by the number of months each Class Member worked in a Covered
Position.  The provision for unclaimed funds to be redistributed to
Class Members on a pro-rata and uncashed checks donated to two worthy
charitable concerns is appropriate and ensures that all of the net
proceeds of the settlement are directed at class members to the extent
administratively possible.

The Class Representative Payments (of $5000.00 each) and the
Class Counsel Attorneys' Fees Payment are appropriate, based on their
efforts and work by the attorneys, and will nevertheless be subject to
court approval at a later stage.  Finally, the expected Settlement
Administrator's fees and costs of less $20,000 are consistent with
wage-and-hour settlements of this type and size.  Mallison Decl. at
¶48-56.

> 3.   The Settlement Falls Well Within the Range of Possible
>      Approval.

To evaluate the "range of possible approval" criterion, which
focuses on "substantive fairness and adequacy," "courts primarily
consider plaintiffs' expected recovery balanced against the value of
the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp.
2d at 1080.  The Settlement confers a substantial benefit on the Class
Members, while proceeding with litigation imposes significant risks.

Although Plaintiffs conducted substantial discovery and
investigation to corroborate their claims, and will have access to
confirmatory discovery as part of the Settlement agreement, Coast
vigorously contests liability.  The primary cause of action in this

16

case revolves around the provision of meal periods.  However, the extent of an employer's obligation to provide meal periods under California law is currently before the California Supreme Court, *see Brinker Restaurant Corp. v. Superior Court (Hohnbaum)*, 165 Cal. App. 4th 25 (2008) (review granted)), and resolution of the issue cannot be predicted with certainty.

Moreover, even if Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation.  At the least, continued litigation will delay payment to the Class.

Finally, as part of the Settlement, the Class Members will be deemed to have released all those claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law.  These released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.  The Release also protects class members against any complaint related counter or cross-claims, if any, that defendants may have against plaintiffs.

Preliminarily, the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of the significant delay.

D.  <u>**The Proposed Notice, the Claim Form, the Form of Election Not to**</u>
<u>**Participate, and the Notice Plan Are Fair and Adequate.**</u>

"Adequate notice is critical to court approval of a class

settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  A class

action settlement notice "is satisfactory if it generally describes

the terms of the settlement in sufficient detail to alert those with

adverse viewpoints to investigate and to come forward and be heard."

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th

Cir. 2004)(internal citation and quotation omitted).

Here, the proposed Class Notice, Settlement Exh. B, and the

manner of notice agreed upon by the parties, *Id*. § III.E.2., is "the

best notice practicable," as required under Federal Rule of Civil

Procedure 23(c)(2)(B).  All Class Members can be identified and the

Class Notice and the related materials (the Claim Form, Settlement

Exh. C, and the form of Election Not to Participate in Settlement, *id*.

Exh. D) will be mailed directly to each Class Member.  The Class

Notice adequately informs Class Members of the nature of the

litigation, the essential terms of the Settlement, and how to make a

claim, object to or comment on, or elect not to participate in the

Settlement.  Further, the Class Notice identifies Class Counsel,

specifies the amounts of the Class Representative Payments, Class

Counsel Attorneys' Fees Payment, and Class Counsel Litigation Expenses

Payment that Plaintiffs and Class Counsel will seek, and explains how

to obtain additional information regarding the action and the

Settlement.

Within 14 days after preliminary approval of the Settlement, Coast will provide the Settlement Administrator with a database containing the name and current or last known address of each Class Member, as well as other data necessary to calculate Settlement Shares and administer the Settlement.  Settlement § III.E.2.a.  The Class Notice and other materials will be mailed by the Settlement Administrator within 14 days following Coast's delivery of the Class Members' data.  *Id*. § III.E.2.b.  The Settlement Administrator also will send a reminder notice fourteen days before the deadline for Class Members to submit claims.  *Id*. § III.E.2.e.  The Settlement Administrator will use the National Change of Address database to locate any Class Members whose Notices are returned as undeliverable.  *Id*. § III.D.  In addition, the Settlement Administrator will publish notice of the Settlement in newspaper(s) of general circulation in area(s) and language(s) designed to reach potential class members.

Not later than when the parties file their motion for final approval of the Settlement, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members.  *Id.*, § III.E.2.f.

These procedures provide the best possible notice to the Class Members.

E.   Appointment the Settlement Administrator.

The parties have agreed upon and propose that the Court appoint Rust Consulting, Inc., to serve as the Settlement Administrator.  Rust

Consulting is experienced in administering wage-and-hour class action settlements, and has bid its fees and costs for this Settlement at under $25,000.  Mallison Decl., ¶40, Exh. 5.

F.   Proposed Schedule.

| Date | Event |
|------|-------|
| 11/16/09 | Preliminary Approval hearing (all dates that follow assume this date) |
| 11/30/09 | Coast to provide to Settlement Administrator with an electronic data base containing Class Member contact information and data necessary to calculate settlement shares (14 days after Preliminary Approval) |
| 12/10/09 | Settlement Administrator to mail Notice Packets to all Class Members (10 days after receiving Class Member information) |
| 12/28/09 | Date for Settlement Administrator to contact Class Members who have not submitted Claim Forms to remind them of the of the upcoming deadline |
| 1/9/10 | Last day for Class Members to comment on or object to Settlement (30 days after mailing of Notice Packets), to mail valid Elections Not to Participate in Settlement, and to mail valid claims for Settlement Shares (30 days after mailing of Notice Packets) |
| 1/14/10 | Last day for Settlement Administrator to report to parties on Class Members who have elected not to participate in Settlement or who have submitted claims (7 days after the deadline for submission of Elections Not to Participate in Settlement and Claims Forms) |
| 1/19/10 | Last day for Settlement Administrator to |

| Date | Event |
|------|-------|
|  | serve on the parties and file with the Court statement of due diligence in complying with its obligations under the settlement. |
| 1/22/10 | Due date for joint motion for final approval of settlement and plaintiff's separate motion for class representative fee and class counsel's attorneys' fees and expenses (28 days before final approval hearing) |
| 2/22/10 | Final approval hearing |

IV. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs motion to:

(1) Preliminarily certify the Settlement Class is GRANTED;

(2) Conditionally certify a FLSA collective action is GRANTED;

(3) Preliminarily certify the Settlement is GRANTED;

(4) Approve the Proposed Notice, the Claim Form, the Form of Election Not to Participate, and the Notice Plan is GRANTED;

(5) Appoint Rust Consulting, Inc. the Settlement Administrator is GRANTED;

(6) Approve the schedule set forth above is GRANTED.

SO ORDERED
Dated:  November 16, 2009

/s/ Oliver W. Wanger
Oliver W. Wanger
United States District Judge

21