1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ENRIQUEZ VASQUEZ and JUAN
ANDRES RUIZ on behalf of a
class of similarly situated
employees,

            Plaintiffs,

     v.

COAST VALLEY ROOFING, INC., dba
COAST ROOFING, and FRANCIS
DOMINIC GIANGROSSI,

          Defendants.

1:07-CV-00227 OWW DLB

MEMORANDUM DECISION AND ORDER
GRANTING JOINT MOTIONS FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT, CLASS CERTIFICATION,
AND JUDGMENT (DOC. 60), AND FOR
APPROVAL OF FEES, REPRESENTATIVE
AWARDS, AND COSTS (DOC. 61).

I. <u>INTRODUCTION</u>

Plaintiffs Enriquez Vasquez and Juan Andres Ruiz brought this

action on behalf of themselves and approximately 177 current and

former roofing workers employed by Defendants Coast Roofing, Inc.

("Coast") and Francis Dominic Giangrossi, alleging violations of

federal and state wage-and-hour laws. *See* First Amended Class Action

Complaint ("FAC"), filed Sept. 19, 2007, Doc. 23.  On November 17,

2009, the district court preliminarily approved the terms of a

negotiated Class Action Settlement.  Doc. 57.  Before the court for

decision are joint motions for final approval of the class action

settlement, class certification, and judgment, Doc. 60, and for approval of fees, representative awards, and costs, Doc. 61.  No oppositions have been filed, nor was any oral objection made in open court during the publicly-noticed hearing of these motions on February 22, 2010 at 10:00 AM in Courtroom 3 (OWW).

## II. FACTUAL BACKGROUND

A.    Summary of the Litigation.

The FAC alleges that Coast failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to provide all legally required meal periods and rest breaks; failed to provide accurate, itemized employee wage statements; and failed to compensate employees for travel time and mileage.  The FAC seeks to certify a class composed of Plaintiffs and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.

Plaintiffs' counsel reviewed employee records gathered pursuant to pre-litigation non-discovery methods provided by California Labor Code section 226, interviewed numerous witnesses, and reviewed hundreds of pages of documents from employees before filing the complaint.  Mallison Decl., Doc. 62, at ¶¶ 37-39.

B.    Summary of the Settlement.

1.    The Gross Settlement Payment.

Under the Settlement, Coast will make a Gross Settlement Payment of $300,000.  This payment will cover Settlement Shares to be paid to

2

Class Members who submit valid claims; the employer share of payroll taxes on the Settlement Shares; a $10,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses of $25,000 (which is less than the Administrator's actual costs of $27,592); and (subject to court approval) payments to Plaintiffs, in addition to their Settlement Shares, of $5,000 each in compensation of their services as Class Representatives and payments to Class Counsel of up to $100,000 for their reasonable attorneys' fees and up to $10,000 in expenses.  *See* Settlement Agreement ("Settlement") § III.A-C, attached to Mallison Decl. at Ex. 1, Doc. 62-2.  There will be no reversion of the Gross Settlement Payment to Coast.

   2.   <u>Payment of Settlement Shares.</u>

   After the other amounts are deducted, the Gross Settlement Amount (termed the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims, based upon the following allocation formula:

> The Settlement Share for each Claimant will be based on (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount.

Settlement § III.D.1.  This simple formula relies upon information readily available from Coast's records and is commonly used in wage-

and-hour cases.  Mallison Decl. at ¶43.

     3.    <u>Distribution of Unclaimed Funds and Uncashed Checks.</u>

    In the event that not all Class Members submit claims, the residual will be redistributed to those Class Members who do submit valid claims.  Settlement § III.D.3.  In the event that checks issued to Class Members are not cashed, these monies will be donated to two public interest organizations on a 50%/50% basis: (1) the California Rural Legal Assistance; and (2) the Boys and Girls Club of Bakersfield.  *Id*. § III.F.10.  Donation of the residual to these public interest organizations that serve low-income workers is appropriate.  *See* Mallison Decl. at ¶44.

     4.    <u>Scope of the Release.</u>

    The Settlement provides that all Participating Class Members release Defendants as follows:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Coast, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law (the "Class's Released Claims").  The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, including, but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses.

Settlement § III.G.2.

5.   Objections and Opt-Out Process

Any Class Member who so wishes had an opportunity to object to or comment on the Settlement, or may elect not to participate in the Settlement.  The Class Notice fully explains the objection/comment and opt-in procedures.  Settlement § III.F.4.

6.   Termination of Settlement.

The Settlement provided for confirmatory discovery to be conducted during the approval process.  Plaintiffs reserved the right to void the Settlement if this confirmatory discovery revealed any substantial variance from previous discovery or other factual representations made by defendants and relied upon by Plaintiffs as the basis for the Settlement.  Settlement § III.F.7.  Plaintiffs completed this confirmatory discovery, including consultation with experts in construction accounting and database analysis.  This discovery did not reveal any reason to void the settlement.  Doc. 67 at 6.

III. DISCUSSION

A.   The Terms of Preliminary Approval Have Been Satisfied.

1.   Notice.

The procedures for giving notice to the class members, as set forth in the Settlement and ordered in the Court's Preliminary Approval Order, Doc. 57, have been carried out.  The Notice of Certification of Settlement Class and Collective Action, Settlement and Hearing Date for Final Court Approval (the "Class Notice"), and

5

the forms of Claim for Settlement Share and Election Not to Participate in Settlement (referred to in conjunction with the "Class Notice" as "Notice Packets") were sent out by the Settlement Administrator via U.S. Mail to Class Members on December 9, 2009, in the manner specified by the Settlement.   Donly Decl., Doc. 69, at ¶10. In addition, on December 11, 2009 a summary version of the Class Notice was published in the Bakersfield Californian and El Popular newspapers.  *Id.* at ¶11.

The U.S. Postal Service returned 40 Notice Packets to the Settlement Administrator.  *Id.* at ¶13.  Best efforts to trace these individuals and/or find their updated addresses were conducted resulting in 24 additional delivered notice packets mailed and 23 delivered.  *Id.* at ¶13.  On December 26, 2009, the Settlement Administrator contacted 165 Class Member who had not yet provided claims forms via phone to remind them about the deadlines in the settlement.  *Id.* at ¶12.

As of January 14, 2010, 56 class members, or more than 31% of the class members submitted claims.  *Id.* at ¶12.  Zero individuals submitted elections not to participate, *id.* at ¶15, and as of January 22, 2010, the date on which Plaintiffs' motion for final approval was filed, no class member had submitted an objection to the settlement, *id.* at ¶18.

B.   <u>Final Approval of a Settlement Class is Appropriate.</u>

In order to approve a class action settlement, a district court

6

must first make a finding that a class can be certified. *See, e.g., Molski v. Gleich*, 318 F.3d 937, 943, 946-50 (9th Cir. 2003). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Pursuant to Federal Rule of Civil Procedure 23(c)(1), approval of the class is appropriate where the plaintiff establishes the four prerequisites of Federal Rule of Civil Procedure 23(a) -- (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation -- as well as one of the three requirements of Rule 23(b). *See Horton v. USAA Cas. Ins. Co.*, --- F.R.D. --- 2009 WL 5066681, *4 (D. Ariz. 2009).

Here, the proposed class is comprised of all individuals who have been employed by Coast in California as non-exempt roofing workers during the period from January 31, 2003 to July 31, 2009. There are approximately 177 Class Members.

1.   <u>Numerosity.</u>

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have

routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  Here, the presence of approximately 177 similarly situated Class Members satisfies the numerosity requirement.

Plaintiffs also must establish impracticability of joinder.  A court should consider "not only the class size but other factors as well, including the geographic diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *See, Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986). The limited size of any individual plaintiff's recovery is also relevant. *Edmondson v. Simon*, 86 F.R.D. 375, 379 (N.D. Ill. 1980). Here, where the potential recovery by any individual plaintiff is relatively small, individual members of the class would likely be unwilling or unable to bring institute separate suits.  Moreover, the filing of individual suits by 177 separate plaintiffs would create and unnecessary burden on judicial resources.

2.   Commonality.

Rule 23(a) also demands "questions of law or fact common to the class."  It does not require that all questions of law or fact be common to every single member of the class.  To satisfy the commonality requirement, plaintiffs need only point to a single issue common to the class. *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D.

Cal. 2000).  Commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985).  Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality.  *Armstrong*, 275 F.3d at 868 (finding commonality requirement satisfied despite individual class members having different disabilities, since all suffered similar harm as a result of defendant's actions).

Here, for purposes of the Settlement only, the parties agree that common questions of both fact and law exist regarding Coast's alleged failure to abide by federal and state wage-and-hour law, including:

- whether Coast failed to provide roofing workers with required meal periods;

- whether Coast failed to pay roofing workers wages for meal periods during which they remained on duty;

- whether Coast authorized and permitted the roofing workers to take required rest periods;

- whether Coast failed to pay roofing workers an additional hour of wages for missed meal periods and rest breaks;

- whether Coast failed to pay all legally required minimum wages and overtime compensation to hourly production workers;

- whether hourly production workers are owed waiting time penalties because Coast allegedly willfully failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and

- whether Coast's business practices violated Business and Professions Code section 17200 et seq.

9

- whether Coast's failed to pay for travel time and mileage to roofing workers.

These common questions of law or fact are sufficient to satisfy the commonality requirement.

### 3.   Typicality.

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Armstrong*, 275 F.3d at 868.  "Typicality ... is said ... to be satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id*.  Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need to be substantially identical." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998).  Plaintiffs' claims are essentially identical to those of the class as whole, as they are all roofing workers who were paid under the same pay practices.  The typicality requirement is satisfied.

### 4.   Adequacy of Representation.

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of

interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). The adequacy of representation requirement is met here because Plaintiffs have the same interests as the remaining members of the Settlement Class, i.e. obtaining payment for wages unlawfully withheld; there is no apparent conflict between the named Plaintiffs' claims and those of the other Class Members; and Plaintiffs are represented by experienced and competent counsel who has experience in litigating over 40 wage and hour class action cases.

5. Rule 23(b)(3).

Having satisfied the prerequisites set forth in Rule 23(a), Plaintiffs must also satisfy one of the three provisions of Rule 23(b). The parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

With regard to superiority, Rule 23(b) provides four determining factors. Fed. R. Civ. P. 23(b). The first factor for consideration is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor is more relevant where each class member has

suffered sizeable damages or has an emotional stake in the litigation. *See, e.g., In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982).  Here, where the monetary damages each plaintiff individually suffered are relatively modest, certifying a class action is favored.  *Id.*

The second factor to consider is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class."  Fed. R. Civ. P. 23(b)(3)(B).  The only known litigation concerning the controversy is the consolidated cases at issue in this settlement.

The third factor to consider is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  The fourth and final factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  This factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  However, the context of settlement, these two factors are essentially irrelevant.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial).

Here, where the monetary damages each plaintiff individually

suffered are relatively modest, and where no other litigation

concerning these allegations is pending, certifying a class action is

favored under Rule 23(b)(3).

The motion for final approval of the Settlement Class is GRANTED.

C.   Final Approval of the Settlement Is Appropriate.

"The court must approve any settlement ... of the claims ... of a

certified class." Fed. R. Civ. P. 23(e)(1)(A).  A settlement may be

approved only after a hearing and on finding that it is fair,

reasonable, and adequate.  Fed. R. Civ. P. 23(e)(1)(C).  Such approval

is required to make sure that any settlement reached is consistent

with plaintiffs' fiduciary obligations to the class. *See Ficalora v.*

*Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The court also

serves as guardian for the absent class members who will be bound by

the settlement, and therefore must independently determine the

fairness of any settlement. *Id.*  However, the district court's role

in intruding upon what is otherwise a private consensual agreement is

limited to the extent necessary to reach a reasoned judgment that the

agreement is not the product of fraud or collusion between the

negotiating parties, and that the settlement, taken as a whole, is

fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92

F.3d 1503, 1506 (9th Cir. 1996).  Therefore, the settlement hearing is

not to be turned into a trial or rehearsal for trial on the merits.

*Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th

Cir. 1982).  Ultimately, the district court's determination is nothing

13

more than an amalgam of delicate balancing, gross approximations, and rough justice.  *Id.*

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors: (1) the strength of the Plaintiff's case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant.  *Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234,1242 (9th Cir. 1998).  This list of factors is not exclusive and the court may balance and weigh different factors depending on the circumstances of each case.  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

    1.   <u>Strength of Plaintiffs' Case.</u>

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Nat'l Rural Telecom. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting 5 Moore's Federal Practice § 23.85[2][b] (Matthew Bender 3d. ed.)).  However, in balancing these factors, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."  *Id.*

14

1
2
3
4
5

> [T]he settlement or fairness hearing is not to be turned
> into a trial or rehearsal for trial on the merits. Neither
> the trial court nor [the Court of Appeals] is to reach any
> ultimate conclusions on the contested issues of fact and law
> which underlie the merits of the dispute, for it is the very
> uncertainty of outcome in litigation and avoidance of
> wastefulness and expensive litigation that induce consensual
> settlements.

6

7

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th

Cir. 1982).

8

9

10

11

12

13

14

    Although Plaintiffs maintain their strong belief in the

underlying merits of their case, Plaintiffs' counsel acknowledges that

wage and hour cases on behalf of low wage workers can difficult to

prove on a class basis and considered the uncertainties surrounding

proving their claims in a lengthy and complex jury trial.  This factor

weighs in favor of approval.

15

16

17

18

19

20

21

22

23

24

25

26

27

    2.   Risk, Expense, Complexity, and Likely Duration of Further
         Litigation.

    Another relevant factor is the risk of continued litigation

balanced against the certainty and immediacy of recovery from the

Settlement.  *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec.

Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000).  A court may "consider the

vagaries of litigation and compare the significance of immediate

recovery by way of the compromise to the mere possibility of relief in

the future, after protracted and expensive litigation." *Oppenlander

v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597, 624 (D. Colo. 1974).  "It

has been held proper to take the bird in hand instead of a prospective

flock in the bush." *Id.*

28

Here, there are significant risks in continued litigation and no guarantee of recovery given the current state of the law. The California Supreme Court is currently reviewing the standards applicable to recovery of rest and meal period premiums. *See Brinker Restaurant Corp. v. Superior Court*, 85 Cal. Rptr. 3d 688 (2008). This factor weighs in favor of approval.

3.   Risk of Maintaining Class Action Status Throughout the Trial.

To the extent that all class members were employed as roofers and were compensated on the same basis, the only lack of class eligibility is that lost compensation calculations are individual. This would not defeat class treatment. This factor is neutral.

4.   Amount Offered in Settlement.

The recovery of $300,000, or approximately $2600 per claimant net of all expenses, is a sizeable settlement in a wage and hour case involving low-income workers. Although a higher per claimant award was arguably possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1234)(internal citation and quotation omitted). This factor weighs in favor of approval.

5.   Extent of Discovery Completed, and the Stage of the Proceedings.

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *See City P'ship Co. v. Atlantic*

16

*Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).  Here, Plaintiffs conducted significant discovery of the underlying timekeeping and payroll documents in this case, consisting of tens of thousands of pages, and undertook in depth interviews of numerous Class members, resulting in informed prosecution and eventual settlement of the matter.  By the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F Supp 735, 745 (S.D.N.Y. 1985).  This factor weighs in favor of approval.

      6.  <u>Experience and Views of Counsel.</u>

     In reviewing the opinions of counsel, "great weight" is accorded to the recommendation of the attorneys.  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).  They are the ones who are most closely acquainted with the facts of the underlying litigation.  *Id*.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  "[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of correctness applies to a class action settlement reached in arms'-length negotiations between

17

experienced, capable counsel after meaningful discovery).

Here, class counsel understood the complex risks and benefits of any settlement and concluded that the proposed Settlement was a just, fair, and certain result.  This factor weighs in favor of approval.

7.   <u>Presence of a Governmental Participant.</u>

Pursuant to California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code. § 2699.3, California granted Plaintiffs the right to stand in the shoes of the State of California to enforce these claims on behalf of the state and employees.  As a result, Plaintiffs stand as a proxy for the State and have obtained $10,000 for the State of California.  This factor does not weigh against approval.

8.   <u>Reaction of Class Members to the Proposed Settlement.</u>

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court."  Nat'l Rural Telecom. Coop., 221 F.R.D. at 528 (quoting 5 Moore's Fed. Practice § 23.85[2][d]).  Class representatives' opinions of the settlement are especially important because "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class."  *Id*. (citing Manual for Complex Litigation, Third, § 30.44 (1995)).

The Class Representatives, who have an extensive understanding of the merits of the case and the Settlement, *se*e Vasquez Decl., Doc. 63

18

at ¶¶ 7-17; Ruiz Decl., Doc. 64 at ¶¶ 7-17, are strongly in support of the Settlement, Mallison Decl., Doc. 62 at ¶57.  In addition, no class members have objected to the settlement.  This factor weighs in favor of approval.

In sum, the majority of the relevant factors weigh in favor of approving the Settlement.  It represents a substantial recovery that avoids the risks associated with protracted litigation in a document-intensive wage and hour case.

D.   Class Representative Payments; Class Counsel Attorneys' Fees
     Payment and Class Counsel Litigation Expenses Payment.

Where the payment of attorney's fees is also part of the negotiated settlement, the fee settlement must be separately evaluated for fairness in the context of the overall settlement.  *Kinsely v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002).

Plaintiffs and their counsel seek (and Defendants do not oppose), awards to Plaintiffs of Class Representative Payments of $5,000 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives; a Class Counsel Attorneys' Fees Payment of $100,000 (or 33-1/3% of the Gross Settlement Amount); and a Class Counsel Litigation Expenses Payment of $8,967.  *See* Settlement § III.B.1-2.

     1.   Class Representative Payments of $5,000 Each are Fair and
          Reasonable.

Plaintiffs seek payments in the amount of $5,000 to Class

Representatives Enriquez Vasquez and Juan Andres Ruiz.  These payments
are intended to recognize the time and efforts Mr. Vasquez and Mr.
Ruiz spent on behalf of the Class Members.  Mallison Decl., Doc. 62,
at ¶67.; *see generally* Vasquez Decl., Doc. 63; Ruiz Decl., Doc. 64.
"Courts routinely approve incentive awards to compensate named
plaintiffs for the services they provide and the risks they incurred
during the course of the class action litigation."  *Ingram v. The
Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal
quotations and citations omitted) (approving service awards of
$300,000 to each named plaintiff in recognition of the services they
provided to the class by responding to discovery, participating in the
mediation process, and taking the risk of stepping forward on behalf
of the class.); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F.
Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award
to plaintiffs).

Here, the Class Representatives assisted prosecution and
settlement of the Class' claims by: (1) investigating and
substantiating the claims alleged in this action; (2) helping to
prepare the complaint; (3) producing documentary evidence to Counsel;
and (4) aiding with settlement of this litigation.  *See* Mallison Decl.
at ¶57; Vasquez Decl. at ¶¶ 6-17 (estimating that he has devoted
"dozens" of hours of his time to the litigation); Ruiz Decl. at ¶¶ 6-
17 (same).  Moreover, Class Representatives undertook the financial
risk that, in the event of a judgment in favor of Defendant in this

20

action, they could have been personally responsible for any costs

awarded in favor of Defendant.  *See, e.g.*, *Whiteway v. Fed Ex Kinkos*

*Office & Print Services, Inc.*, 2007 WL 4531783, at *2-*4 (N.D. Cal.

Dec. 17, 2007).  There has been no objection to the Class

Representative payment.

   In light of the work the Class Representatives performed on

behalf of Class Members, the risk the Class Representatives undertook,

and the Class Members' response to the Settlement, the requested

payment is reasonable and appropriate.

   2.   <u>Class Counsel Attorneys' Fee Payment of $100,000 is Fair and
        Reasonable.</u>

   Class Counsel seeks an attorney's fee award of $100,000, or 33

1/3% of the common fund.  This is significantly less than Class

Counsel's asserted lodestar of $178,475.[1]  Courts have long recognized

the "common fund" or "common benefit" doctrine, under which attorneys

who create a common fund or benefit for a group of persons may be

awarded their fees and costs to be paid out of the fund.  *See Hanlon*,

150 F.3d at 1029.  "[A] lawyer who recovers a common fund for the

---

[1] The district court has reviewed the billing records of Plaintiffs' counsel, submitted as attachments to the Supplemental Declaration of Stan Mallison.  Doc. 71. These records reveal that Stan Mallison, a partner who bills at $525 per hour spent approximately 190 hours on this case; Hector Martinez, a partner who also bills at $525 per hour spent approximately 75 hours on this case; Marco Palau, an associate who bills at $350 per hour spent approximately 30 hours on the case; and Hector Hernandez, a paralegal who bills at $150 per hour, spent approximately 170 hours on the case.  *See id.* at ¶4.  The billed lodestar is reasonable, given that this case involved considerable investigation, the filing of a fairly complex, thirty-six page complaint, the litigation of a motion to dismiss followed by the filing of an amended complaint, and the subsequent settlement of a putative class action, requiring preliminary approval, notice, and final approval.  Moreover, the settlement only provides for recovery of slightly more than half of the total lodestar.

benefit of persons other than himself or his client is entitled to a
reasonable attorney's fee from the fund as a whole." *Staton v. Boeing
Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (quoting *Boeing Co. v. Van
Gemert,* 444 U.S. 472, 478 (1980)).  Awarding a percentage of the
common fund is particularly appropriate "'when each member of a
certified class has an undisputed and mathematically ascertainable
claim to part of a lump-sum judgment recovered on his behalf.'"  *Id.*
(quoting *Boeing Co.*, 444 U.S. at 478-79).

Here, where the Settlement requires lump sum allocations to each
Settlement Class and applies distribution formulas pursuant to which
each Class Member who submits a valid claim will receive a
mathematically ascertainable payment, application of the percentage of
common fund doctrine appropriate.  The typical range of acceptable
attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total
settlement value, with 25% considered the benchmark.  *Powers v.
Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029;
*Staton*, 327 F.3d at 952.  However, the exact percentage varies
depending on the facts of the case, and in "most common fund cases,
the award exceeds that benchmark."  *Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009); *see also In re Activision Sec.
Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all
common fund awards range around 30%").

When assessing whether the percentage requested is reasonable,
courts look to factors such as: (a) the results achieved; (b) the risk

22

of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).

### a.   Results Achieved.

Given that the individual claims in this case concerned Defendants' alleged failure to pay class members for portions of days on an intermittent basis and failure to proper provide rest and meal periods, claims that would not generally produce substantial damages awards, the recovery of $300,000, which will provide the 56 claimant employees with a net recovery of approximately $2,600 per employee on average, is a favorable result.

### b.   Risks Involved.

There were significant risks in pursuing this case.  Among other things, some of the key claims involved the timely provision of rest and meal periods, an issue that is pending before the California Supreme Court.  It is possible that any resulting decision could significantly lower the potential recovery in this case.

### c.   Skill Required

This case required specialized skills to find and contact largely Spanish speaking workers, litigate cutting-edge legal theories surrounding rest and meal periods, and navigate challenging issues of

proof in light of the limited recording keeping by Defendant.  The case also required intensive extrapolation from existing records.

        d.   The Quality of the Work.

Counsel thoroughly investigated the case, weeding through a myriad of potential claims to find those that could be litigated. Counsel also developed sophisticated legal claims, such as the clock rounding and on-duty meal period claims, despite the lack of clear caselaw on point.

        e.   Contingent Nature of the Representation.

Class Counsel prosecuted the case on a contingency basis, which presented considerable risk.  *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-398 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.").

        f.   Awards made in similar cases.

The requested fee is in line with fee awards made in the following, similar class action wage and hour cases litigated in the Central Valley:

- 33.3% in *Benitez et al. v. Wilbur* (E.D. Cal., 1:08-CV-1122 LJO GSA)

- 33.3% in *Chavez et al. v. Petrissans et al.* (E.D. Cal., 1:08-CV-00122  LJO-GSA)

- 30% in *Vasquez v. Aartman* (E.D. Cal., 1:02-CV05624 AWI LJO)

- 31.25% in *Baganha v. California Milk Trans.* (E.D. Cal., 1:01-CV-05729 AWI LJO)

- 33% in *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 AWI LJO)

The Settlement's provision of $100,000 in attorney's fees (or approximately 33.3% of the total recovery obtained, is fair and reasonable in light of the good result achieved for Plaintiffs, the risk counsel took pursuing the matter, and the skill they exhibited prosecuting the case.

   3.   Class Counsel Litigation Expenses Payment of $8,967 is Fair and Reasonable.

In the course of this litigation, Plaintiffs' counsel incurred out-of- pocket costs totaling $8,967, and expect to incur modest additional in costs related to the final approval of the Settlement. *See* Mallison Decl. at ¶62.  The costs billed, which include ground transportation, copy and scanning costs, computer research, and expert witness fees, are reasonable.  See Doc. 71.  The actual costs incurred are less than the estimated $10,000, which was included in the Class Notice.

25

IV. CONCLUSION

For the reasons set forth above, the joint motion to:

(1) Certify the Settlement Class is GRANTED;

(2) Approve the Settlement is GRANTED;

(4) Approve the proposed Class Representative Payments in the amount of $5,000 to Enrique Vasquez and $5,000 to Juan Andres Ruiz is GRANTED;

(5) Approve the proposed Class Counsel Attorney Fee Award in the amount of $100,000 is GRANTED;

(6) Approve Class Counsel's Costs Award in the amount of 8,967 is GRANTED.


SO ORDERED
Dated:  March 8, 2010

                                    /s/ Oliver W. Wanger
                                    Oliver W. Wanger
                                    United States District Judge

26